630 F.2d 616
 Hazel HOPKINS, Special Administratrix of the Estate of Dewey
Hopkins, Deceased, Appellant,
v.
CHIP-IN-SAW, INC., Canadian Car (Pacific) Division of Hawker
Siddeley Canada, Ltd., Appellees.
 No. 79-1706.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 20, 1980.
Decided Sept. 16, 1980.
 
 G. William Lavender, Arnold, Arnold, Lavender & Rochelle, Texarkana, Ark., argued, E. Ben Franks, Texarkana, Ark., on brief, for appellant.
 Dennis L. Shackleford, Shackleford, Shackleford & Phillips, El Dorado, Ark., for appellees.
 Before HEANEY, BRIGHT and STEPHENSON, Circuit Judges.
 BRIGHT, Circuit Judge.
 
 
 1
 Hazel Hopkins brought this suit under the Arkansas wrongful death statute, Ark.Stat.Ann. §§ 27-906 to -910 (1979), to recover damages for the death of her husband, Dewey Hopkins. Mr. Hopkins died when he was struck by a 2 x 4 board forcibly ejected from a lumber machine manufactured by defendant Canadian Car (Pacific) Division of Hawker Siddeley Canada, Ltd., and installed by defendant Chip-N-Saw, Inc., a wholly owned marketing subsidiary of Canadian Car (collectively, Chip-N-Saw).[1] The district court submitted the case to a jury on theories of strict liability, breach of implied warranty of merchantability, and negligent failure to warn. The jury returned a general verdict in favor of Chip-N-Saw, and the district court entered judgment accordingly.
 
 
 2
 On appeal Hopkins contends that the trial court erred in its charge to the jury on her negligence theory of recovery, specifically in its instructions to the jury on Chip-N-Saw's duty to warn and in its refusal to give certain requested instructions on the warnings required of Chip-N-Saw. Having reviewed the record, we agree that the district court's instructions on Chip-N-Saw's duty to warn were erroneous. Accordingly, we reverse the judgment and remand the case for retrial on the negligence claim.I. Factual Background.
 
 
 3
 Canadian Car manufactures machines used for the processing of logs into marketable lumber. After a log is debarked and cut to a standard length, it enters the "Chip-N-Saw" machine where a series of cutting heads and saws removes the rounded portion of the log and converts the remainder into rough lumber. Because a log is not perfectly round, however, the Chip-N-Saw machine alone will not always produce a board with flat surfaces on all sides. Any irregularly produced lumber, therefore, also passes through the "Reman Edger Chipper" (Reman), which shears off the uneven edges. Thus, an imperfect 2 x 8 , for example, can be converted into a 2 x 4 that meets industry requirements.
 
 
 4
 As designed by Canadian Car, the Reman uses chipping edges and a high-speed saw blade to make all sides flat. The saw blade rotates toward the operator, creating the potential for a board to kick back violently out of the saw pocket toward the operator. A kickback may occur for a number of reasons, such as if the blade hits a knot or piece of metal in the board. To protect the operator, Canadian Car equips the Reman with "antikickback fingers" to block any board ejected from the machine. These fingers, however, cover only about one-half the width of the saw pocket and they must slide smoothly for the saw to move properly.
 
 
 5
 In late 1973 or early 1974, Chip-N-Saw sold and installed a Reman at the Stamps, Arkansas, plant of Georgia-Pacific Corporation where Dewey Hopkins worked as a repair and maintenance employee. Mike Greener, a service representative of Chip-N-Saw, supervised the installation. His written reports from July 16 to August 1, 1974, state that the Reman was operating properly, that he had spent several hours training the initial operators of the machine in the presence of the plant superintendent and plant manager, and that he had orally warned the plant superintendent and plant manager not to operate the Reman without its antikickback fingers in place.
 
 
 6
 Dewey Hopkins was not a regular operator of the Reman, but he occasionally served as a relief operator. While serving in that capacity on March 3, 1976, he was killed by a 2 X 4 board that kicked out of the saw pocket and struck him in the chest. A full investigation of the accident disclosed that the antikickback fingers had been pushed to the side of the saw pocket, rendering them inoperable at the time of Hopkins' death.
 
 
 7
 At trial, Georgia-Pacific's plant supervisor and plant manager testified that the operators had been warned not to operate the Reman without the antikickback fingers in place. Some of decedent's coworkers, however, denied receiving such warnings, and no warning labels were affixed to the machine. According to the testimony of an expert witness for Hopkins, the Reman's design might have actually encouraged the operators to disconnect the safety fingers because they often jammed, interfering with the saw's movement and halting production.
 
 
 8
 II. Instructions.
 
 
 9
 This appeal relates solely to the adequacy of the district court's charge to the jury on Chip-N-Saw's duty to warn of dangers associated with use of the Reman.[2] Hopkins objected to three instructions in the charge:
 
 
 10
 A manufacturer of a lumber remanufacturing device has a duty to give reasonable and adequate instructions with respect to the conditions and methods of its safe use when danger is reasonably foreseeable in its use, unless the danger is known to the user or is reasonably discoverable by him, and a violation of this duty to give instructions is negligence.
 
 
 11
 Now ladies and gentlemen, in this regard, if you find, through a preponderance of the evidence, that Mike Greener for the Defendants Chip-N-Saw and Canadian Car gave reasonable and adequate warnings to Georgia-Pacific as to the dangers and as to the proper use of the Reman Edger, and that the defendants Chip-N-Saw and Canadian Car did not foresee and reasonably should not have foreseen the subsequent misuse of the edger, then the defendants, Chip-N-Saw and Canadian Car fulfilled their duty to warn.
 
 
 12
 Now you're instructed that a manufacturer or seller of a lumber remanufacturing device, which instrumentality is inherently dangerous so as to require special precautions to prevent injury, has a duty to give reasonable and adequate instructions with respect to the conditions and methods of its safe use unless the danger is known to the user or is reasonably discoverable by him. And again a violation of this duty is negligence.
 
 
 13
 And again, ladies and gentlemen, in this regard, if Mike Greener, on behalf of the defendants, Chip-N-Saw and Canadian Car, gave instructions to Georgia-Pacific, and these two defendants did not foresee and reasonably should not have foreseen the misuse of the edger, then each and both of the defendants fulfilled the duty to instruct.
 
 
 14
 Now, you are further instructed that if, following any act or omission of a party, a defendant in this case, and an event intervened which in itself caused any damage, completely independent of the conduct of the original defendant, then his act or omission was not a proximate cause of the damage.
 
 
 15
 And in this case, if you find that the defendants, Chip-N-Saw and Canadian Car, through Mike Greener, gave reasonable and adequate warnings to Georgia-Pacific, and that the accident was solely caused by Georgia-Pacific's failure to act on such warnings and instructions, and that the defendants Chip-N-Saw and Canadian Car did not foresee and reasonably should not have foreseen that Georgia-Pacific would disregard the warnings given it, then the omission of Georgia-Pacific was an intervening proximate cause and your verdict must be for the two defendants.
 
 
 16
 Hopkins contends that these instructions were erroneous because Chip-N-Saw had a duty to warn not only Georgia-Pacific but the operators of the Reman as well. We agree that, under the evidence in this case, the questioned instructions were inadequate.
 
 
 17
 When a manufacturer can reasonably foresee that the warnings it gives to a purchaser of its product will not be adequately conveyed to probable users of the product, then its duty to warn may extend beyond the purchaser to those persons foreseeably endangered by the product's use. Warnings given to the purchaser do not necessarily insulate the manufacturer from liability to injured users of the product. Restatement (Second) of Torts § 388 & Comment n (1965); L. Frumer & M. Friedman, 1 Products Liability § 803(3) (1980).
 
 
 18
 Hopkins' objections[3] and requested instructions[4] made clear that she sought an instruction apprising the jury that Chip-N-Saw's duty to warn extended beyond Georgia-Pacific to Dewey Hopkins. If, under the evidence, Chip-N-Saw might have reasonably foreseen that its warnings to Georgia-Pacific would not reach the operators of the Reman,[5] and that the dangers would not otherwise be obvious to the machine's operators,[6] then Hopkins was entitled to such an instruction.
 
 
 19
 The evidence indicated that the antikickback fingers covered only a portion of the saw pocket. They often required maintenance to slide smoothly and unless they slid properly, production would come to a halt. This design, according to an expert witness, tended to induce human error by encouraging operators to shove the safety fingers to the side of the saw pocket or to remove the fingers from the machine altogether. Either could be easily accomplished by loosening a few bolts. This expert also testified that the antikickback fingers jammed twice in just the one-hour period during which he evaluated the design and safety features of the Reman. He also noted that the machine's maintenance instructions failed both to instruct purchasers or operators on how to deal with jams and to warn against removal of the antikickback fingers. On the basis of this evidence,[7] the jury might find that Chip-N-Saw did not satisfy its duty to warn solely by giving reasonable and adequate warnings to Georgia-Pacific.
 
 
 20
 The district court's instructions, however, failed to instruct the jury on this theory for recovery. Although two of the instructions in question alluded to the possibility that "subsequent misuse" of the Reman might affect whether the jury must find for Chip-N-Saw, neither defined the type of misuse that would extend Chip-N-Saw's duty to warn to the operators or indicated whose misuse would give rise to this extended duty. These ambiguities contrast with an otherwise clear inference from these verdict-directing instructions that adequate warnings to Georgia-Pacific would insulate Chip-N-Saw from liability to Hopkins. In this context, we also note that the district court's general instructions on Chip-N-Saw's duty to warn were not sufficiently broad in their definition of negligence to inform the jury that the duty to warn may extend beyond the purchaser of a manufacturer's product to an ultimate user.[8]
 
 
 21
 We hold, therefore, that the district court's failure to adequately and fairly instruct the jury on Chip-N-Saw's duty to warn justifies a retrial on the negligence theory of liability.
 
 
 22
 IV. The District Court's Jury Instruction Procedure.
 
 
 23
 Unfortunately, our reading of the record, the instructions, and the objections suggests that this remand for retrial might not have been necessary had the trial court observed the mandatory procedure for instructing juries as set forth in Fed.R.Civ.P. 51.[9] That procedure calls for the trial judge to allow counsel opportunity to object to the court's proposed charge and request additional instructions before the jury retires to consider its verdict. Here, only after the jury retired did the trial judge hear objections, treating them "as having been made before the jury retires."[10] Additionally, the trial judge permitted counsel to submit any requested instructions to the court reporter within a few days after trial.[11]
 
 
 24
 The obvious purpose of this rule is to give counsel an opportunity to call errors or imperfections in the instructions to the attention of the trial court judge and afford the court an opportunity to correct any errors before the case goes to the jury. The purpose is not to perfect the record for appeal, but to allow the judge opportunity to correct defective instructions so that appeal and retrial due to prejudicial instructions will be unwarranted.
 
 
 25
 We emphasize for the benefit of all counsel and federal trial judges that the requirements of Rule 51 must be observed. Counsel must be provided with an opportunity to object to the proposed charge outside the hearing of the jury, and the trial judge must consider and rule on those objections before, not after, the jury retires to consider its verdict.
 
 
 26
 Reversed and remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 Jurisdiction of the district court was based on diversity of citizenship and the requisite amount in controversy. 28 U.S.C. § 1332 (1976)
 
 
 [2]
 At the close of Hopkins' case, Chip-N-Saw moved for a directed verdict on the ground that the evidence was insufficient as a matter of law for Hopkins to recover either in strict liability or for breach of implied warranty or negligent failure to warn. At the end of testimony, Chip-N-Saw again moved for a directed verdict but on the additional ground that the evidence established Georgia-Pacific's removal of the antikickback fingers as the sole proximate cause of Dewey Hopkins' death. The district court denied the motions and they are not before us on this appeal. We must assume for purposes of this appeal, therefore, that the case was properly before the jury
 
 
 [3]
 To the instructions in question, Hopkins raised the following objections:
 All right, plaintiff respectively objects to the second paragraph thereof, concerning the giving of instructions and warnings by Mike Greener for the reason that instructions to a third person is not sufficient as a matter of law to suffice under the duty of the defendant to give instructions as that revised the concept or the requirement of privity. The concept of privity has been abolished and I believe that in effect revives that concept and would respectfully suggest that the proper warning and proper instruction is only one which is does is intended to and does reach the injured party.
 Comes now plaintiff and objects to the instruction of the Court numbered page 18, uh-for the same reason that just previously stated concerning the concept of privity and the fact that it-the defendant is under a duty to convey instructions which will reasonably reach the injured party, and not solely its customer.
 Comes now the Plaintiff and respectively objects to the Court's instruction on numbered page 25, again with reference to the instructions or warnings given to Georgia-Pacific by Mike Greener for the reasons previously stated.
 
 
 [4]
 Hopkins requested four additional instructions:
 A manufacturer who knows or in the exercise of reasonable testing or inspection should realize that its product is likely to be dangerous when used for the purpose for which it is made and has reason to believe that those who use it will not realize the extent or seriousness of the risk has a duty to exercise reasonable care to warn them of the danger involved. When a user of a product might not appreciate the dangers to be anticipated if guards furnished by the manufacturer are not used, then there is a duty to warn about this danger. The duty is especially present if the guards might make use of the product more awkward. Failure to fulfill these duties is negligence. If such negligence in any one or more of the particulars I have been specifying proximately results in injury to the user of the product, the manufacturer is liable therefore.
 A manufacturer or supplier of a product must give warning of any dangerous propensity of an article produced or sold by him inherent in the product or in its use of which he knows or should know and which human beings coming into contact with the product should not ordinarily discover. The warning should be such that if followed would make the product safe for human beings. To comply with this duty the manufacturer or supplier must appropriately label the product, giving due consideration to the likelihood of accidents and the seriousness of consequences from failure to so label it as to warn of any dangers that are inherent in it and its use or that may arise from the improper handling or use of the product. A violation of this duty is negligence.
 While there is no duty of a manufacturer or supplier of a product to warn a user who knows of the danger or by whom danger is reasonably discoverable, the products danger must, however, be shown to have been known or discoverable. This proof is not made by showing that another person unrelated to the decedent but in a similar occupation has somehow come upon knowledge of the danger. A danger is discoverable only if the user can without danger to himself reasonably detect the hidden danger and guard against it.
 The fact that a danger is obvious does not preclude the existence of the duty to warn, if the danger is such that a user would not necessarily appreciate and the fact that a lumber remanufacturing device lacks a guard, which was obvious, does not necessarily demonstrate that a user would have realized a need for a guard.
 
 
 [5]
 Contrary to Hopkins' contention, however, Chip-N-Saw was not required as a matter of law to warn Dewey Hopkins merely because he was an operator of the Reman. Ordinarily, a manufacturer may be able to satisfy its duty to warn by extending to the purchaser adequate and reasonable instructions and warnings on the effective and safe use of its product. Only in circumstances in which the manufacturer should reasonably foresee that its warnings to the purchaser will be ineffective to protect other persons foreseeably endangered by the product does the manufacturer's duty to warn extend beyond the purchaser. Whether such circumstances exist in a particular case is a question of fact
 
 
 [6]
 Chip-N-Saw's duty to warn might not extend to operators of the Reman if the dangers of operating the machine without the antikickback fingers in place were obvious to the operators, for a warning of dangers already known and appreciated would serve no useful purpose. Chip-N-Saw argues that any defect in the duty-to-warn instructions could not have prejudiced Hopkins because the evidence as a whole clearly established that the Reman's dangers were obvious and known to decedent. We find at least some evidence in the record to defer to the trial judge's decision to submit the issue of obviousness to the jury for its determination, and we note that the trial judge adequately instructed the jury on this issue
 
 
 [7]
 We recognize that the opinions of this expert were discredited in part by cross-examination and other evidence, but the district court submitted these opinions to the jury for it to evaluate in determining the issue of liability
 
 
 [8]
 And a manufacturer of a lumber remanufacturing device has a duty to give a reasonable and adequate warning of dangers inherent or reasonably foreseeable in its use for a purpose and in a manner which the manufacturer should reasonably foresee. And a violation of this duty is negligence. However, ladies and gentlemen, there is no duty, to warn a user of obvious dangers or those known to him or those which he should reasonably discover for himself
 A manufacturer of a lumber remanufacturing device has a duty to give reasonable and adequate instructions with respect to the conditions and methods of its safe use when danger is reasonably foreseeable in its use, unless the danger is known to the user or is reasonably discoverable by him, and a violation of this duty to give instructions is negligence.
 Although Hopkins did not specifically object to these instructions, they provide the context in which we must consider whether the trial court fairly and adequately submitted to the jury the question of whether Chip-N-Saw's duty to warn extended beyond Georgia-Pacific to Dewey Hopkins.
 
 
 [9]
 Rule 51 explicitly provides:
 At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.
 
 
 [10]
 Although the trial judge obtained the consent of counsel to follow this procedure, such consent cannot justify subverting the purpose of a mandatory rule of procedure
 
 
 [11]
 THE COURT: Uh Ben (attorney) we'll let you go back, you and Bill (attorney) and go through your file, and put anything in there you want to, and then just furnish it to the Court
 MR. FRANKS: All right. That's my most important. Why- why don't I - may I have a few minutes while Mr. Shackleford makes his objections?
 THE COURT: Sure, sure, but I mean if in the next few days if you should happen to lose this case, you go ahead and put all the instructions that you were going to request because we're not trying to deprive you of a right to appeal.
 MR. FRANKS: No, I understand.
 THE COURT: And so we're you can supply them to the Court Reporter at any time.
 MR. FRANKS: Thank you, your Honor.
 THE COURT: By that I mean within a reasonable time, in the next few days. All right, Mr. Shackleford.