James E. ALM, Petitioner,

v.

ALUMINUM COMPANY OF AMERICA
et al., Respondents.

No. C–4093.

Supreme Court of Texas.

July 2, 1986.

Rehearing Denied Nov. 5, 1986.

W. Douglas Matthews, Timothy F. Lee, Schmidt & Matthews, P.C., Houston, for petitioner.

Michael Connelly, Mayor, Day & Caldwell, Houston, for respondents.

KILGARLIN, Justice.

James Alm presents three issues for decision by this court: (1) whether Aluminum Company of America (Alcoa), the designer of a closure system for soft drink bottles, had a duty to warn consumers of the hazard of bottle cap blow off; (2) whether the trial court properly disregarded the jury's findings of gross negligence; and, (3) whether the court of appeals applied the correct legal standards in reviewing the factual sufficiency of the evidence supporting the jury's finding of ordinary negligence.

The trial court rendered judgment for Alm based on the jury's favorable verdict. The court of appeals, with one justice dissenting, reversed that judgment, holding that the evidence pertaining to certain alleged acts of negligence was factually insufficient to support the jury finding against Alcoa. Additionally, the court of appeals held that Alcoa did not have a duty to warn consumers of the hazard of bottle cap blow off. 687 S.W.2d 374. We reverse the judgment of the court of appeals in part and affirm it in part.

During the 1960's, Alcoa designed, patented, manufactured, and marketed a closure system for applying aluminum caps to carbonated soft drink bottles. In 1969, Alcoa sold such a capping machine to JFW Enterprises, Inc., the owner of the Houston 7–Up Bottling Company. The capping machine applied Alcoa-designed 28 millimeter pilfer-proof aluminum caps to soft drink bottles of various sizes. JFW purchased the aluminum capping material from W.H. Hutchinson & Son, Inc. W.H. Hutchinson manufactured the Alcoa-designed and patented resealable caps under licensing agreements with Alcoa.

On June 3, 1976, James Alm suffered a severe eye injury when an aluminum bottle cap exploded off a 32–ounce bottle of 7–Up. Alm had purchased the bottle of 7–Up at a Lewis and Coker supermarket. Lewis and Coker had purchased the bottle from JFW Enterprises.

Alm sued Lewis and Coker, JFW, and Alcoa under theories of strict liability and negligence but settled with Lewis and Coker and JFW before trial. Alcoa filed a cross-action against JFW and Lewis and Coker. The jury found against Alcoa on all the submitted liability issues. However, the trial court disregarded the jury's answers to special issues 1 through 6, stating that strict product liability did not apply to Alcoa. The trial court also disregarded the jury's answers to issues 11 and 12, finding the answers were "against the great weight and overwhelming preponderance of the evidence." In issue 11, the jury found Alcoa was grossly negligent, and in issue 12, it awarded Alm one million dollars in exemplary damages. The trial court rendered judgment on the jury's answers to the remaining issues, which found Alcoa 55% negligent and JFW 45% negligent. Alm was awarded $300,500 as his actual damages.

The question of Alcoa's negligence was broadly submitted in one issue. The court of appeals set out and considered four alleged acts of negligence by Alcoa:

(1) Alcoa negligently designed the bottle and cap in that the threads on the bottle to be impressed into the cap were too shallow;

(2) Alcoa negligently designed the cap by including an optional pilfer-proof band on the cap;

(3) Alcoa was negligent in recommending to bottlers a visual inspection system based upon the batch and hold principle of quality control, as opposed to inventing or devising some fail safe system of inspection for use by bottlers;

(4) Alcoa was negligent in failing to adequately warn the bottler (JFW) and/or the plaintiff about the risk that an improperly applied cap could blow-off and cause personal injury.

687 S.W.2d at 378. The court of appeals concluded the evidence was factually insufficient to support a finding of negligence as to the first three alleged acts. As to whether Alcoa was negligent in failing to warn JFW and/or Alm, the court of appeals held that Alcoa had no duty to warn Alm. The court held Alcoa did have a duty to warn JFW, but concluded the jury had impliedly found that Alcoa's warning to JFW was adequate.[1] 687 S.W.2d at 382.

Alm contends that Alcoa owed a duty to warn consumers such as himself of the hazard of bottle cap blow off. It is a long standing principle in this state that a duty of care arises when conditions are such that a "prudent person would have anticipated and guarded against the occurrence which caused" another's injury. *St. Louis Southwestern Ry. Co. of Texas v. Pope*, 98 Tex. 535, 865 S.W. 57 (1905). As this court recently stated, a person has a duty to act as a "reasonable prudent person would act under the same or similar circumstances regarding any reasonably forseeable risk." *Colvin v. Red Steel Co.*, 682 S.W.2d 243 (Tex.1984).

Alcoa argues that it owed no duty to warn Alm as it was not the manufacturer or seller of any component part or the final product which injured Alm. Alcoa was, however, the designer and marketer of the closure process, the designer of the cap, and the designer, manufacturer, and seller of the capping machine.

## ALCOA AS DESIGNER

■ Whether a designer who is not a manufacturer has a duty to warn of hazards associated with the use of its designed product has not before been addressed by this court. A manufacturer has long been

---

**1.** This is ironic. The jury had found that Alcoa failed to warn JFW of the potential of hazardous bottle cap blow off, but this was one of the issues disregarded by the trial court. Alm assigned no point of error as to this, however.

held to have a duty to exercise ordinary care in the design of a product. *Gonzales v. Caterpillar Tractor Co.*, 571 S.W.2d 867 (Tex.1978). A designer who is not also the manufacturer should share the same duty to develop a safe design. Alcoa has a duty to exercise ordinary care in the design of its closure system. In fact, Alcoa does not dispute that it owes Alm a duty to design its closure system in a non-negligent way.

A manufacturer, as well as all suppliers of a product, also has a duty to inform users of hazards associated with the use of its products. Restatement (Second) of Torts § 388 (1965); *Olivarez v. Broadway Hardware, Inc.*, 564 S.W.2d 195 (Tex.Civ. App.—Corpus Christi 1978, writ ref'd n.r. e.). There is no reason to distinguish a designer, who has intimate knowledge of a designed product, from a retailer, wholesaler or manufacturer. Alcoa designed the closure system. It is the failure of that system which caused Alm's injury. There can be no justification for requiring a user of Alcoa's closure technology to warn of its hazards while not holding Alcoa to the same duty. The issue in a negligent failure to warn case is simply whether a reasonably prudent person in the position of the designer would warn of hazards associated with the designed product. Alcoa had a duty to warn of the hazards associated with its closure technology if a reasonably prudent person in the same position would have warned of the hazards.

## ALCOA AS MANUFACTURER

■ While no Texas court has ever held a manufacturer precisely in the position of Alcoa liable, at least one court of another jurisdiction has. In *Fabbrini Foods, Inc. v. United Canning Corp.*, 90 Mich.App. 80, 280 N.W.2d 877 (1979), the plaintiff recovered against three defendants, including the designer/manufacturer of a filling machine used by a mushroom canner. The plaintiff had received contaminated mushroom cans produced by the canning machine. Alcoa's position as a remote manufacturer of the capping machine should not

insulate it from liability when its negligence proximately causes damages.

Alcoa supplied a capping machine to JFW. Alcoa knew that through use its capping machine would go out of adjustment, thereby causing misapplied caps. And Alcoa knew of the risk of personal injury from bottle cap blow off at least as early as 1970. Alcoa had a duty to warn users of the hazard of improperly applied caps.

■ Alcoa argues and the court of appeals held that Alcoa satisfied its duty to warn of the hazard of bottle cap blow off by adequately warning JFW. We agree that a manufacturer or supplier may, in certain situations, depend on an intermediary to communicate a warning to the ultimate user of a product. However, the mere presence of an intermediary does not excuse the manufacturer from warning those whom it should reasonably expect to be endangered by the use of its product. The issue in every case is whether the original manufacturer has a reasonable assurance that its warning will reach those endangered by the use of its product. *Hopkins v. Chip-In-Saw, Inc.*, 630 F.2d 616 (8th Cir.1980); *Gordon v. Niagara Machine and Tool Works*, 574 F.2d 1182 (5th Cir. 1978); *Borel v. Fiberboard Paper Products Corp.*, 493 F.2d 1076 (5th Cir.1973); *Doss v. Apache Powder Co.*, 430 F.2d 1317 (5th Cir.1970); *Weekes v. Michigan Chrome and Chemical Co.*, 352 F.2d 603, 607 (6th Cir.1965).

■ In some situations, courts have recognized that a warning to an intermediary fulfills a supplier's duty to warn ultimate consumers. For example, when a drug manufacturer properly warns a prescribing physician of the dangerous propensities of its product, the manufacturer is excused from warning each patient who receives the drug. *Cooper v. Bowser*, 610 S.W.2d 825, 830–31 (Tex.Civ.App.—Tyler 1980, no writ); *Gravis v. Parke-Davis and Co.*, 502 S.W.2d 863, 870 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.). The doctor stands as a learned intermediary between the manufacturer and the ultimate consum-

er. Generally, only the doctor could understand the propensities and dangers involved in the use of a given drug. *Gravis,* 502 S.W.2d at 870. In this situation, it is reasonable for the manufacturer to rely on the intermediary to pass on its warnings. However, even in these circumstances, when the warning to the intermediary is inadequate or misleading, the manufacturer remains liable for injuries sustained by the ultimate user. *Bristol-Myers Co. v. Gonzales,* 561 S.W.2d 801 (Tex.1978); *Crocker v. Winthrop Laboratories, Division of Sterling Drug, Inc.,* 514 S.W.2d 429 (Tex.1974).

Some courts have also held that a bulk supplier, one who sells a product to another manufacturer or distributor who in turn packages and sells the product to the public, need only warn its intermediate distributor and not each individual consumer. *See Jones v. Hittle Service, Inc.,* 219 Kan. 627, 549 P.2d 1383 (1976). *But see Shell Oil Co. v. Gutierrez,* 119 Ariz. 426, 581 P.2d 271 (Ariz.App.1978). But again, the issue is whether the supplier's reliance on the intermediary is reasonable. In determining whether a bulk supplier's duty to warn extends to ultimate users of a product, courts may consider whether the distributor is adequately trained, whether the distributor is familiar with the properties of the product and its safe use, and whether the distributor is capable of passing on its knowledge to consumers. *See Khan v. Velsicol Chemical Corp.,* 711 S.W.2d 310 (Tex.App.—Dallas 1985, writ ref'd n.r.e.); *Jones v. Hittle Service, Inc.; Shell Oil Co. v. Gutierrez.*

Alcoa's position in the chain of design, manufacture, and distribution undoubtedly makes it difficult for Alcoa to directly warn consumers of the hazard of bottle cap blow off. Alcoa's position is somewhat analogous to that of a bulk supplier in that Alcoa has no package of its own on which to place a warning and no control, except by contractual requirements, over the final package labeling which reaches consumers. Therefore, Alcoa should be able to satisfy its duty to warn consumers by proving that its intermediary was adequately trained and warned, familiar with the propensities of the product, and capable of passing on a warning. But, if Alcoa failed to adequately warn and train JFW or if JFW was incapable of passing on the received warning, Alcoa would not have discharged its duty to the ultimate consumer.

The adequacy of a warning is a question of fact to be determined by the jury. *Bituminous Casualty Corp. v. Black and Decker Manufacturing Co.,* 518 S.W.2d 868, 873 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.). Because the issue of negligence was broadly submitted in this case, there is no explicit finding by the jury as to the adequacy of Alcoa's warning to JFW. Special issue 7 asked:

Do you find that the negligence, if any, of any or all of the following parties proximately caused the occurrence made the basis of this suit:

Answer "Yes" or "No" beside the name of each party listed:

Alcoa _____

JFW _____

James E. Alm _____

The jury answered yes as to Alcoa and JFW but no as to Alm.

In spite of the disregarded jury finding to the contrary, the court of appeals concluded there was an implied jury finding that Alcoa's warning to JFW was adequate. That court reasoned that in finding JFW's negligence was a proximate cause of Alm's injuries, "[t]he jury impliedly found that J.F.W. knew or should have known, because of the warning given by Alcoa, that a misapplied cap would result in personal injury." This analysis is seriously flawed. Certainly the jury could have determined that JFW was negligent without believing that Alcoa adequately warned JFW of the hazards associated with bottle cap blow off. There were, after all, other allegations of negligence against JFW. The court of appeals cannot infer a jury finding from issues inquiring as to JFW's negligence and then use that inferred finding to invalidate an express jury finding that Alcoa's negligence proximately caused

Alm's injuries. The court of appeals should have considered the evidence supporting the jury's finding that Alcoa was negligent without reference to the jury's finding that JFW was negligent.

■ The court of appeals determined that Alm pleaded and attempted to prove four alleged acts of negligence by Alcoa. In order to find that Alcoa's negligence proximately caused Alm's injuries, the jury must have found that at least one of those four allegations as to Alcoa's conduct was true. One allegation was that Alcoa's warning to JFW was inadequate. We must consider whether there was some evidence to support a finding as to that aspect. In deciding a no evidence point, an appellate court must consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

■ The record shows that the only "warning" given JFW of the hazards associated with bottle cap blow off came in an Alcoa owner's manual distributed with its capping machine. The statement in that manual read: "Leakage or closure blow off at lower pressures can occur when the closure application is improper or the glassware is not within specification." The statement did not warn that serious personal injuries could result from cap blow off. The language was not designated as a warning, and it was not set off in type different from that used throughout the manual.

In the same year Alcoa issued its manual, 1970, an Alcoa employee, Jaye Gibbs, prepared a report which stated, "[p]robably the most critical area of closure performance for this market is the closure's ability to retain the package's internal pressure inherent to carbonated products. Faulty performance can cause serious injury to a would-be consumer if the closure blows off." Alcoa's representative, George Overturf, testified that this report was not made available to bottlers using the Alcoa capping machine. No summary of this information or further warning was given JFW. Further, although Alcoa's represent-

ative testified that the incidence of cap blow off did not increase, Alcoa issued a manual in 1977 which specifically warned that "on occasion, an improperly applied closure can be violently ejected by pressure in a package. This can cause serious injury to handlers or consumers." From this evidence the jury could reasonably have concluded Alcoa's warning in 1970, not subsequently supplemented, was inadequate.

In discussing what measures Alcoa took to inform bottlers of the hazard associated with misapplied caps and cap blow off, Overturf testified that in 1972 Alcoa developed a slide presentation for bottlers. The slide presentation included a depiction of a bottle cap blowing off and breaking a window. The accompanying text read:

> A capped bottle containing carbonated beverage is, very simply, a container under pressure, pressure that is harmless when released gradually, but having substantial propellant force when released suddenly. When the consumer starts to remove an improperly applied closure, the pressure inside the bottle may spontaneously remove the closure, to the surprise of the consumer and to the detriment of anything that the closure strikes. It would be a mistake not to recognize that an improperly applied closure could be a potential hazard to the consumer.

Overturf also testified that Alcoa distributed wall charts to bottlers beginning in 1973, showing proper and improper cap application. And, finally, Overturf testified that Alcoa's technical service people informed bottlers about bottle cap blow off.

Overturf testified that he personally did not know which of this information, slide presentation, wall charts, or technical service instruction, was provided JFW. Stephen Matisko, superintendent of capping machine technology service for Alcoa, testified that it was common practice for Alcoa to receive a written report when a bottler was shown the Alcoa slide presentation or when a bottler was furnished an Alcoa wall chart. Matisko admitted that there was no document which showed that JFW ever

saw the slide presentation or received a wall chart.

Charles Ferro, the plant superintendent for JFW, testified that he had never seen Alcoa's slide presentation. Ferro also testified that he had not received a wall chart from Alcoa until two weeks before trial. Additionally, Ferro testified that he was not familiar with the hazards associated with misapplied caps and that Alcoa had never told him of any hazard associated with bottle caps blowing off.

Finally, Richard Condra, a technical service representative for Alcoa, was asked whether he informed JFW that people were getting injured across the country from cap blow offs. Condra responded that he did not know people were being injured, that Alcoa had never told him that people were being injured, and thus, he had no reason to inform JFW.

This evidence clearly constitutes some evidence, certainly more than a scintilla, that Alcoa inadequately warned JFW. Therefore, the court of appeals erred in holding that the jury impliedly found Alcoa's warning to the bottler to be adequate.

Alm next complains of the trial court's disregarding the jury's finding of gross negligence. In its judgment, the trial court stated that it "disregarded and set aside the Jury's answers to Questions Numbers 11 and 12 because the court finds that, while there is some evidence to support such answers of the Jury, such answers to Questions Numbers 11 and 12 are against the great weight and overwhelming preponderance of the evidence."

■ Rule 301, Texas Rules of Civil Procedure, expressly provides that a trial court may "disregard any Special Issue Jury Finding that has no support in the evidence." A trial court may not disregard a jury's answer because it is against the great weight and preponderance of the evidence. *Campbell v. Northwestern National Life Insurance Co.*, 573 S.W.2d 496, 497 (Tex. 1978); *Garza v. Alviar*, 395 S.W.2d at 824. In such a situation, the trial court may only grant a new trial. *Gulf, Colorado and Santa Fe Railway Co. v. Deen*, 158 Tex.

466, 470–71, 312 S.W.2d 933, 937, *cert. denied*, 358 U.S. 874, 79 S.Ct. 111, 3 L.Ed.2d 105 (1958).

■ The trial court erred in disregarding the jury's answers to issues 11 and 12. We reinstate those answers. However, as Alcoa had no opportunity to complain of the sufficiency of the evidence to support the answers to issues 11 and 12, we remand to the court of appeals. In that court, Alcoa may raise sufficiency arguments as it chooses as to gross negligence and exemplary damages.

Alm lastly complains that the court of appeals incorrectly reviewed the factual sufficiency of the evidence supporting the jury's finding of ordinary negligence. Notwithstanding the finality of judgments of the courts of appeals on fact questions, this court has jurisdiction to determine if a correct standard has been applied by the intermediate court. *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1961).

■ The court of appeals discussed the factual sufficiency of the evidence supporting Alm's allegations that Alcoa negligently designed the bottle thread depth, negligently failed to include a mechanical inspection system, and negligently designed the bottle cap with a pilfer-proof band. We agree with the court of appeals that Alm failed to offer any probative evidence that the thread depth of the bottle was a proximate cause of his injury. From our reading of both the statement of facts and the court of appeals' decision, however, it appears that court did not consider all of the evidence in determining the factual sufficiency of the evidence supporting Alm's remaining two theories.

■ When reversing a trial court judgment on insufficiency grounds, a court of appeals must detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient. Further, the court of appeals must state in what regard the contrary evidence

greatly outweighs the evidence in support of the verdict. *Pool*, 715 S.W.2d at 635. The court of appeals failed to do those things in this case.

Having concluded that Alcoa had a duty to adequately warn the consumer either directly or by warning the intermediary, we affirm in part and reverse in part the judgment of the court of appeals. We remand to that court for it to consider Alcoa's factual insufficiency points regarding the adequacy of its warning of the hazard of cap blow off to JFW, and for the court to reconsider Alcoa's factual insufficiency points regarding its failing to include a mechanical inspection system and its designing the cap with a pilfer-proof band. Additionally, we remand to the court of appeals so that it may consider points Alcoa may choose to raise in respect to the jury's finding of gross negligence and exemplary damages.

GONZALEZ, J., files a dissenting opinion in which McGEE, J., joins.

GONZALEZ, Justice, dissenting.

While I agree that Alcoa owed a duty under the facts of this cause, I disagree with the court's other holdings. I dissent because the court:

(1) addresses an inadequate warning theory for negligence liability which Alm neither pleaded nor submitted to the jury;

(2) reverses the burden of proof on an issue regarding the adequacy of the warning;

(3) usurps the court of appeals' jurisdiction for reviewing the factual sufficiency of the evidence; and

(4) addresses the court of appeals' standard for reviewing the factual sufficiency of the evidence even though Alm did not assert such a complaint by point of error.

Alm pleaded that Alcoa was liable under both strict liability and negligence theories, the trial court, however, disregarded the jury findings on strict liability; Alm did not appeal this action. Thus, this is a negligence case.

Liability in a negligence action requires: (1) a legal duty owed one person by another; (2) a breach of that duty; (3) that the breach was a proximate cause of the injury; and (4) actual injury. *Colvin v. Red Steel Co.*, 682 S.W.2d 243, 245 (Tex.1984); W. KEETON, Et Al., PROSSER AND KEETON ON TORTS § 30, at 164–65 (5th ed. 1984). The threshold question of whether a duty exists in a given situation is a question of law for the court. *Jackson v. Associated Developers of Lubbock*, 581 S.W.2d 208, 212 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). *See Abalos v. Oil Development Co.*, 544 S.W.2d 627, 631 (Tex.1976). Our question is whether, under negligence principles, Alcoa, a manufacturer who sold a "capping machine" to a bottler, had a duty to warn consumers of a potential danger resulting from misapplied bottle caps.

### DUTY

Dean Prosser notes that "duty is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff." PROSSER & KEETON, *supra* at 356. *Alcoa did not manufacture, distribute, or sell the injury producing product, the bottle cap.* Alcoa did, however, manufacture and sell another product, the capping machine. Alcoa knew that the capping machine could, without proper maintenance and operation, create a risk of misapplied caps. Alcoa owed a duty to consumers to act as a reasonable prudent manufacturer would act under the same or similar circumstances regarding any foreseeable risk. *See Colvin v. Red Steel Co.*, 682 S.W.2d 243, 245 (Tex.1984).

Alcoa's position, as a remote manufacturer, is relevant to the duty it owed consumers because it affects the extent of Alcoa's duty to warn and its ability to effectively distribute a warning. Significantly, Alcoa is the manufacturer of one product, the capping machine, while J.F.W. is the assembler of the injury producing product, the 7–Up bottle. Alcoa sold the capping

machine to J.F.W. whose employees operated and maintained the machine. Alm was injured by a misapplied bottle cap which resulted from allowing the capping machine to get out of adjustment. J.F.W., an intermediate assembler, controlled the entire bottling process.

The mere presence of J.F.W. as an intermediary does not necessarily relieve Alcoa, the original manufacturer, of its duty to warn. When the original manufacturer gives a warning to an intermediate manufacturer or assembler, however, it can be relieved of its liability for the intermediary's failure to disseminate the warning. *See Borel v. Fiberboard Paper Products Corp.*, 493 F.2d 1076, 1091 (5th Cir.1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974). *See also Martinez v. Dixie Carriers, Inc.*, 529 F.2d 457 (5th Cir.1976); *Hill v. Wilmington Chem. Corp.*, 279 Minn. 336, 156 N.W.2d 898 (1968); *Powell v. Standard Brands Paint Co.*, 166 Cal.App.3d 357, 212 Cal.Rptr. 395 (1985). In other words, when a manufacturer notifies an intermediary of the danger and the intermediary "proceeds to sell the product anyway, the manufacturer is insulated from liability." *Helene Curtis Indus. v. Pruitt*, 385 F.2d 841, 862 (5th Cir.1967), *cert. denied*, 391 U.S. 913, 88 S.Ct. 1806, 20 L.Ed.2d 652 (1968). Thus, the party's position in the chain of distribution is a factor to be considered in making the determination as to the existence of a duty to directly warn.

The Texas courts have applied a similar analysis in other duty to warn cases. For instance, an adequate warning to the physician relieves a drug manufacturer of its duty to warn the consumer-patient of hazards associated with its product. *Gravis v. Parke-Davis & Co.*, 502 S.W.2d 863, 870 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.). *See also Bristol-Meyers Co. v. Gonzales*, 561 S.W.2d 801 (Tex.1978); *Crocker v. Winthrop Lab's, Div. of Sterling Drug*, 514 S.W.2d 429 (Tex.1974); *Cooper v. Bowser*, 610 S.W.2d 825, 830–31 (Tex.Civ.App.—Tyler 1980, no writ). Because a warning on the drug package may not be understood, the duty to warn lies with the party who is in a position to give an effective warning, the doctor. Similarly, because as Alm's expert testified, the bottle was the optimum place for a warning, Alcoa's position as a remote manufacturer made it difficult for Alcoa to give an effective warning.

Another important consideration in determining the extent of Alcoa's duty to consumers is that *Alcoa never had physical control over the package or product which reached Alm*. In this regard, this cause is analogous to cases involving a bulk supplier who sells a product to another manufacturer or distributor who in turn packages and sells a finished product to the public. In *Jones v. Hittle Service, Inc.*, 219 Kan. 627, 549 P.2d 1383, 1394 (1976) the court held that the propane gas manufacturer did not have a duty to warn the ultimate consumer where he sells to a distributor who is familiar with the final product's dangerous propensities. The court notes that the manufacturer was unable to communicate an effective warning, by stating:

> The wholesaler is seriously hampered in any attempt to communicate directly with the ultimate consumer. As pointed out in *Parkinson v. California Co.*, [255 F.2d 265 (10th Cir.1958)], the bulk wholesaler has no way of telling who the ultimate purchaser might be, and has no package on which to endorse any warning. The best the wholesaler could do would be to furnish literature to his retailer and hope it was passed on—a chancy operation at best. We fail to see how this procedure improves upon a situation where the wholesaler deals with a knowledgeable retailer. In either event the wholesaler must depend on his vendee to pass on his message, and cannot do so himself.

*Id.* at 1394. *See also Weekes v. Michigan Chrome & Chem. Co.*, 352 F.2d 603 (6th Cir.1965). Thus, the court held that the wholesaler's duty to warn consumers only extended to warning the distributor who packages the product for consumption by the public.

In acting as a reasonably prudent manufacturer would act under the same or similar circumstances regarding the foreseeable risk, Alcoa owed a duty to Alm which required warning J.F.W. of the risk to consumers by misapplied caps. Alcoa breached its duty to Alm if it did not warn, or did not adequately warn, J.F.W.

## PRESERVATION OF INADEQUATE WARNING THEORY

Alcoa provided J.F.W. with a 1970 owner's manual containing the following warning:

> Leakage or closure blow-off at lower pressures can occur when the closure application is improper ...

Alcoa, then, did warn J.F.W. that caps could blow-off if the capping machine was not properly adjusted to prevent misapplication.

Alcoa still could have breached its duty to Alm if it inadequately warned J.F.W.

1. The submitted issue read:

> [Issue # 7] Do you find that the negligence, if any, of any or all of the following parties proximately caused the occurrence made the basis of this suit:
> Answer "Yes" or "No" beside the name of each party listed:

|  |  |
|---|---|
| Alcoa: | Yes |
| J.F.W.: | Yes |
| James E. Alm: | No |

> [Issue # 8] What percentage of the negligence that cause the injuries to James E. Alm do you find from a preponderance of the evidence to be attributal to each of the parties found by you to have been negligent?
> Answer by stating the percentage, if any, opposite each name:

|  |  |  |
|---|---|---|
| Alcoa: | 55 | % |
| J.F.W.: | 45 | % |
| James E. Alm: | 0 | % |
|  | 100% | |

2. Alcoa objected to the submission of these issues because:

> 1. There are no pleadings to support the submission of these issues.
> 2. There is no evidence, or in the alternative, the evidence is legally insufficient, or in the alternative, it is against the great weight and preponderance of the evidence to submit these issues.
> 3. These questions inquire as to the conduct of the parties without limitation to the pleadings and inquiries as to conduct for which

*Alm, however, failed to plead either that Alcoa was negligent for failing to warn J.F.W. or that Alcoa was negligent for failing to adequately warn J.F.W.* Further, Alm did not request an issue or instruction regarding the adequacy of the warning. The adequacy of the warning to J.F.W. is a question of fact. *Bituminous Casualty Corp. v. Black & Decker Mfg. Co.*, 518 S.W.2d 868, 873–74 (Tex.Civ.App. —Dallas 1976, writ ref'd n.r.e.). Alm, the party with the burden of establishing duty and breach of duty on a failure to warn theory, had the burden to plead and secure a jury finding that the warning to the intermediate assembler was inadequate. Tex.R.Civ.P. 279. Alm failed to do either.

Alcoa, on the other hand, properly objected to the submission of the broad negligence issue [1] which did not limit the jury's consideration to acts pleaded and proved.[2] In *Scott v. Atchinson, Topeka & Santa Fe Ry.*, we observed that:

> Alcoa has not been shown to have duty or responsibility. It further allows the jury to consider elements of negligence outside the pleadings and allows the jury to decide negligence and with proximate cause less then ten members agreeing on the same issue of negligence or proximate cause.
> 4. These questions are defective under the guidelines set out in *Scott v. Atchison, Topeka & Santa Fe Railway,* in that it fails to limit the question to the facts which have been plead and proved, and permits the jury to consider evidence outside the pleadings, such as, for example, facts relating to the capping machine and a failure to require a warning in the licensing agreement. Furthermore, *Scott* clearly describes the incorrectness of this issue because the jury is permitted to consider, with this question, allegations of negligence in the pleadings for which there is no proof and no evidence in the case, such as sale of the bottle, cap and contents in question and inspection of the bottle, cap and contents in question. Objection is specifically made to the absence of an instruction limiting the jury's consideration to negligent acts or omissions and proximate causal relationships supported by both pleadings and proof. For example, and without limitation, alleged negligence of Alcoa in failing to adequately warn [J.F.W.] was heavily focused as in the evidence, and yet no evidence was offered on proximate cause in this area.

.    .    .    .    .

Under Rule 277, the trial court has the discretion to submit an issue broadly, including the combination in one issue of several acts or omissions which may be alleged to constitute negligence. However, when one or more pleaded acts or omissions are unsupported by evidence and the record contains evidence of other possible negligent acts or omissions which were not pleaded, failure to limit the broad ultimate fact issue to acts or omissions which were raised by both pleadings and proof violates Rule 277 and is error. In view of the wide variance between the pleadings and unpled facts and circumstances from which the jury could have inferred that the railroad was negligent, such error was reasonably calculated to and properly did cause the rendition of improper judgment.

572 S.W.2d at 273, 277 (Tex.1978).

Alcoa has shown a substantial variance. Alm pleaded allegations of negligence in the "design, testing, formulation, manufacture, preparation, inspection, instructions for the use of, warnings for the use of, servicing, sale, and distribution of the thirty-two (32) fluid ounce bottle, cap and contents of the '7–Up' soft drink in question." All these allegations are directed at the soft drink bottle. There is a total lack of any evidence in regard to most of these categories of negligence. While it can be argued that Alm's pleadings were based on a failure to warn consumers theory, it is not at all accurate to assert that Alm pleaded that Alcoa failed to warn, or failed to adequately warn, J.F.W.

On the other hand, Alm raised matters before the jury which were not supported by his pleadings and which could be construed by the jury as evidence of fault. For instance, Alm's expert testified about the potential for intermittent misapplication of the capping machine, even though the cap that injured Alm was misapplied because the machine was out of adjustment. Alm offered testimony by an "expert" on patent law that Alcoa could, through its licensing agreements, require others to include a warning on soft drink bottles. No support whatsoever in Alm's pleadings for any supposed negligent failure to enforce such agreements. Another area of variance dealt with Alcoa's "closure system." Alm's expert was allowed, over objection, to testify about alleged defects in the "Alcoa process enclosure." Alm attempted to hold Alcoa liable for negligence in its "closure system." Such allegation of negligence was clearly outside of its pleadings pertaining to the 7–Up bottle and cap. Finally, and most importantly, Alm, without pleadings, argued in trial that Alcoa failed to provide J.F.W. with an adequate warning. Yet, Alm failed to offer any evidence with respect to a proximate causal relationship; thereby implying negligence without any requisite proof on proximate cause.

Alcoa, then, complained of the lack of pleadings and proof in regard to whether Alcoa adequately warned J.F.W. The trial court overruled Alcoa's objection. Alcoa preserved error on this point in its motion for judgment *non obstante verdicto* and in its points of error presented to the court of appeals.

The court of appeals did not address this point because it held that the warning was adequate. The court of appeals' rationale was that because the jury affirmatively found that J.F.W. was negligent, the jury must have found that J.F.W. knew or should have known that its negligent act of misapplying the cap, or its own failure to warn, could foreseeably result in Alm's personal injuries. The rationale continues that because it is well established that one does not have a duty to warn a party already aware of a danger, the jury must have found that Alcoa adequately warned J.F.W., or did not need to warn, since J.F.W. was already aware of the danger. Thus, the court of appeals overlooked Alcoa's argument on the improper submission of the broad issue and arrived at a favorable result for Alcoa under its own analysis. The courts use of implied findings under Rule 279 was improper.

In our review of the judgment of the court of appeals, it is well settled that the

party who prevailed in the court of appeals is entitled to have his assignments, which were properly presented in that court, considered by this court insofar as may be necessary to determine what judgment should have been rendered by the court of appeals. *McKelvy v. Barber,* 381 S.W.2d 59, 64 (Tex.1964); *Holland v. Nimitz,* 111 Tex. 419, 232 S.W. 298 (1921). Moreover, we are required to examine the brief of the prevailing party in the court of appeals to determine if there is another ground on which its judgment should be affirmed. *Knutson v. Morton Foods, Inc.,* 603 S.W.2d 805, 809 (Tex.1980); *Goodyear Tire & Rubber Co. v. Jefferson Constr. Co.,* 565 S.W.2d 916, 920 (Tex.1978); *McKelvy,* 381 S.W.2d at 64. Alcoa properly raised points of error in regard to the submission of a broad negligence issue that allowed the jury to find negligence on theories which were not pleaded such as Alcoa's alleged failure to adequately warn J.F.W.

Even though Alm did not plead that Alcoa failed to warn J.F.W. or that the warning was inadequate, and even though there was no assertion by Alm in the briefs or during oral argument that these issues were tried by consent, the court remands this cause to the court of appeals because "there is some evidence of an inadequate warning." The court of appeals is then to determine whether the evidence is factually sufficient to support the jury's "subsumed finding" that Alcoa provided an inadequate warning to J.F.W. Because the jury found Alcoa negligent, the court holds that it "must" have found that Alcoa inadequately warned J.F.W. Yet, the jury did not have to find that Alcoa inadequately warned J.F.W., as it may have found Alcoa negligent for one of the other three alleged acts upon which the court of appeals remanded to the trial court for a new trial. Defendants now have burden to negate *all* pleaded and proved acts of negligence and even *all* unpleaded and objected to acts of negligence.

The court does not give defendants any opportunity to complain of the submission broad issues. In doing so, the court ignores this court's prior analysis in the *Scott* case. Basically, defendants are "thrown to the wolves" with regard to unpleaded or unsubmitted grounds of recovery that are "included" in broadly submitted issues.

## BURDEN OF PROOF

The court states: "Alcoa should be able to satisfy its duty to warn consumers by proving that its intermediary was adequately trained and warned, familiar with the propensities of the product, and capable of passing on a warning." 717 S.W.2d at 592. This is an unprecedented reversal of the burden of proof. Alm brought the cause of action; Alm had the burden to show Alcoa's warning to J.F.W. was inadequate. In an analogous products liability warning case, *Technical Chem. Co. v. Jacobs,* 480 S.W.2d 602 (Tex.1972), this court observed that:

> In the words of Dean Keeton, when a product is defective due to *inadequate labeling,* "the aspect of the defendant's conduct that made the sale of the product unreasonably dangerous [i.e., the label] must be found to have contributed to the plaintiff's injury." 48 Texas L.Rev. at 413. *This means that it is incumbent upon the plaintiff to secure a jury finding that the faulty labeling was a cause of the injury. It is this finding [plaintiff] failed to secure.*

*Id.* at 605 (emphasis added). As Alm failed to meet his burden; this cause should not be remanded to the court of appeals on a failure to adequately warn theory.

## EVIDENCE REVIEW

The majority now overtly misapplies our decision in *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986) for reviewing the court of appeals holdings on the factual sufficiency of the evidence. As foreseen, in reviewing factual sufficiency points, the *Pool* opinion can now be used to substitute this court's judgment for that of the court of appeals. *Pool,* 715 S.W.2d at 638 (Gonzalez, J., concurring).

The court remands this cause to the court of appeals for its "reconsideration" of "all" the evidence in determining whether there was factually sufficient evidence to support the jury's findings on two of Alm's ordinary negligence theories. In regard to the first theory, the court remands for reconsideration of Alcoa's alleged negligence in designing a cap with a pilfer-proof band. Because the lower court did not mention the testimony of Jaye Gibbs, this court implicitly holds that the court of appeals did not consider such testimony. Gibbs stated that Alcoa tested closures where the pilfer-proof ring was essentially the only thing holding a cap with weak threads on a bottle. Gibbs further stated that from Alcoa's tests on pilfer-proof caps and caps without the pilfer-proof ring revealed that a similar result was reached with each. The court of appeals' failure to expressly mention this testimony should not be grounds for remanding to the court of appeals for their reconsideration of the factual sufficiency of the evidence.

The court next attacks the court of appeals' alleged failure to consider evidence in its factual sufficiency review on Alm's theory that Alcoa was negligent in failing to include a mechanical inspection system. The court of appeals failed to explicitly mention the testimony of Alm's expert, George Green, that a mechanical inspection system was feasible and that he had in the past offered to design a system for Alcoa. Green states that there are several methods for assuming there is a good thread on cap, "[o]ne of them is a method of ultrasonic transducer." Another method involves a "shadowgraph." Green made these simple statements without reference to costs, efficiency, or utility. Green did not state that these methods would have prevented cap misapplication or the injury to Alm. I can hardly criticize the court of appeals for failing to set out these points in its opinion.

Other evidence exists in the record which supports the court of appeals' judgment. The court's remand to the court of appeals for its reconsideration on the sufficiency of the evidence was inappropriate for the two alleged acts of ordinary negligence.

Henceforth, it appears that the courts of appeals must summarize and transcribe the entire statement of facts. If it does not, this court can second guess the court of appeals whenever we do not agree with its assessment, utilizing *any* evidence the court of appeals does not mention in order to remand the cause to the court of appeals for its further review.

### PRESERVATION OF FACTUAL SUFFICIENCY POINT

Alm only brought two points of error in his writ application:

### FIRST POINT OF ERROR

(GERMANE TO FIRST THROUGH FIFTH ASSIGNMENTS OF ERROR IN MOTION FOR REHEARING.)

THE COURT OF APPEALS ERRED IN HOLDING THAT ALCOA'S DUTY TO GIVEN AN ADEQUATE WARNING OF THE HAZARDS OF ITS CLOSURE SYSTEM DID NOT EXTEND TO CONSUMERS SUCH AS PLAINTIFF.

### SECOND POINT OF ERROR

(GERMANE TO EIGHT THROUGH TENTH ASSIGNMENTS OF ERROR IN MOTION FOR REHEARING.)

THE COURT OF APPEALS ERRED IN FAILING TO HOLD THAT ALCOA'S BREACH OF ITS DUTY TO WARN CONSUMERS SUCH AS PLAINTIFF AND BOTTLERS SUCH AS J.F.W. WAS GROSS NEGLIGENCE AND IN NOT REINSTATING THE JURY'S FINDING OF PUNITIVE DAMAGES OF $1,000,000 AGAINST ALCOA.

Clearly, neither of these points of error asserts that the court of appeals erred in its standard for reviewing the factual sufficiency of the evidence. The court, *sua sponte*, addresses its own point of error regarding the sufficiency of the evidence.

The court clearly violates the mandates of Tex.R.Civ.P. 476, which provides:

The consideration of the Supreme Court *shall be limited to questions of law raised by points in the application for writ of error* and to questions of law certified by a Court of Appeals.

Tex.R.Civ.P. 476 (Vernon 1986) (emphasis added). Caselaw further establishes that "[t]his court may consider only those questions of law raised by assignments of error in the application for writ of error ... [and that] petitioner waives the right to complain of any holding to which no error is assigned." *State Farm Mut. Auto Ins. Co. v. Cowley*, 468 S.W.2d 353, 354 (1971). This court is not authorized to reverse a lower court's judgment in the absence of properly assigned error. *See State Bd. of Ins. of State of Texas v. Westland Film Indus.*, 705 S.W.2d 695 (Tex.1986); *Gulf Consolidated Int'l. Inc. v. Murphy*, 658 S.W.2d 565 (Tex.1983). The above rationale was applied in *Nat. Life & Accident Ins. Co. v. Blagg*, 438 S.W.2d 905, 909 (Tex.1969) where the court of appeals made a "no evidence" holding. We observed that "[s]ince this holding was not assigned as error in a motion for rehearing before the Court of Civil Appeals or in an application for writ of error before this court, it is final in Court of Civil Appeals, and we have no jurisdiction to review it." *Id.* at 566.

Alm asserted nineteen points of error in his motion for rehearing in the court of appeals. Points sixteen and seventeen complained of the court of appeals' standard for review of the factual sufficiency of the evidence. An examination of Alm's two points of error show that they are "germane" only to points one through five and points eight through ten in his motion for rehearing before the court of appeals. Rather than assert all of the points raised in his motion for rehearing, Alm chose to assert what he probably believed to be his two strongest arguments. Neither point of error complained of the standard applied by the court of appeals in its review of the factual sufficiency of the evidence. The court argues a section of Alm's writ application, which appears after the "Conclusion" of Alm's second point of error, sufficiently presents a point of error in which it can bootstrap a sufficiency point. The section used by the court is entitled: "Plaintiff's Comments on the Court of Appeals Review of the Record." This section complains of such items as the court of appeals addressing Alm's expert witness as "Green," while addressing Alcoa's witness as "Dr." Block. The alleged arguments in this section, however, were clearly not listed under a point of error and cannot be considered by this court.

The court adopts a new approach in appellate review—addressing arguments that have not been raised by points of error. Alcoa certainly did not have an opportunity to respond to the "incorrect standard" for factual sufficiency review arguments that were supposedly raised in this cause. This court is authorized to review errors in the judgment of the court of appeals, it is not authorized to create arguments on behalf of the parties.

For all of the above reasons, I dissent.

McGEE, J., joins this dissent.