First Tennessee Bank v. Stone 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-91-450-CV




FIRST TENNESSEE BANK NATIONAL ASSOCIATION,



 APPELLANT


vs.





HAROLD B. STONE, DEPENDENT EXECUTOR


 OF THE ESTATE OF CHARLES A. OGLE, DECEASED,



 APPELLEE



 




FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY



NO. 50,136, HONORABLE GUY HERMAN, JUDGE 



 



 First Tennessee Bank National Association (the "Bank") appeals from a probate
court order that attempted to give full faith and credit to a Tennessee court judgment but at the
same time awarded the estate a credit for those attorney's fees contained in the judgment which
the probate court determined were not properly chargeable against the estate. Appellee Harold
B. Stone, dependent executor of the estate of Charles A. Ogle (the "Executor"), brings cross
points asserting that the probate court erred in classifying the judgment as a claim against
decedent's estate. We agree with the Bank and will modify the probate court order to the extent
it grants a credit for attorney's fees.



BACKGROUND


 This is a companion case to Stone v. First Tennessee Bank National Ass'n,
No. 3-91-419-CV (Tex. App.--Austin Sept. 16, 1992, n.w.h.) (not designated for publication). Although these two cases do not depend on each other, they arise out of the same estate
administration and are based on the same set of business transactions. Moreover, the claims, both
evidenced by judgments from the Chancery Court of Tennessee, were presented in the same
hearing. A background of the business transactions is helpful to understand the claim at issue
here.

 This claim against the estate arises out of two notes made by the Bank to Athletic
Goods Associates, Inc. (AGA). The notes were made on November 8, 1982, and April 1, 1983,
for $100,000 and $200,000 respectively. Both notes were variable-interest-rate instruments and
were secured by various personal guaranties of limited and unlimited amounts. Athletic Industries
International, Inc. (AII) eventually bought out AGA. On September 27, 1983, the decedent,
Charles Ogle, and four others, executed an unlimited guaranty agreement for all debts of AII. 
The Bank claimed that AGA and AII were run as a single entity and, therefore, the September 27,
1983, agreement also guaranteed AGA's debts.

 The November 1982 AGA note matured on August 12, 1985, and the April 1983
AGA note matured on August 26, 1985. Neither loan was paid in full on maturity. The Bank
was still seeking repayment when Charles Ogle died in December 1985. The Bank made demand
on the Executor for the remainder due on the notes along with interest and attorney's fees. The
Bank's AGA claim was filed on September 12, 1986, and the Executor rejected that claim on
September 16, 1986. On September 30, 1986, the Bank sued the Executor in Tennessee to prove
the rejected claim. That suit was eventually joined with a pre-existing suit that had been filed by
the Bank against the other guarantors of the AGA notes for recovery of the balance due on the
AGA notes and other notes guaranteed by those individuals.

 The Tennessee court originally found that the decedent's guaranty of all AII debts
did not include the AGA notes. That decision was reversed on appeal and a final judgment (the
"AGA judgment") was issued which included a finding that the Executor was liable to the Bank
for the amount of $368,336.33 and post-judgment interest. The AGA judgment does not allocate
the total judgment amount among principal, interest, and attorney's fees. The AGA judgment also
found AGA liable to the Bank in the same amount. However, the judgment did find the Executor
eligible for a credit against the award of amounts already paid on the AGA notes by two of the
other guarantors, in the total amount of $218,594.90.

 The Bank filed a certified copy of the AGA judgment with the probate court in
Texas where the estate was being administered. After a hearing, the probate court found the AGA
judgment valid, final, and binding on the Executor, and granted it full faith and credit. The
probate court then ordered the claim classified as a class-five claim and ordered that the current
value of the AGA judgment be paid. (1) According to the probate court, the AGA judgment's value
at the time of its order was $398,336.33 plus post-judgment interest of $92,334.18, minus the
amount allowed to be credited by the judgment $218,594.90 and minus an additional credit of
$39,464.61. Nothing in the order provides an explanation for this additional credit. The order
then noted that the Executor had already paid $159,358.02 against the AGA judgment, which
amount was credited to the amount due on the claim. The probate court ordered payment of the
remainder of the judgment, amounting to $43,252.98 according to its calculations.



DISCUSSION



Bank's Point of Error

 In a single point of error, the Bank complains of that portion of the probate court's
order reducing the AGA judgment by an additional amount of $39,464.61. The Bank asserts that
there is no evidence or, alternatively, insufficient evidence to support the additional credit. 
Although the probate court's order does not explain the additional credit, the record and the
Executor, in argument on appeal, attribute that credt to an attempt to segregate out attorney's fees
incurred by the Bank in establishing, in the Tennessee court, its case against parties other than the
Executor. The Executor asserts that the evidence at the hearing was sufficient to support a credit
for this purpose because the fees used to establish a case against the other guarantors were not
incurred in the establishment of the claim rejected by the Executor.

 In reviewing a no-evidence point of error, we consider only the evidence and
inferences from the evidence tending to support the finding of fact and disregard all inferences to
the contrary. Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593 (Tex. 1986). We may sustain
a no-evidence point of error if the trial court were barred by rules of law from considering the
evidence offered. Cecil v. Smith, 804 S.W.2d 509, 510 n.2 (Tex. 1991).

 In this case, the probate court was barred by law from relitigating the value of the
judgment found by the Tennessee court. Paxton v. Meyer, 2 S.W. 817 (Tex. 1886); cf. Blair v.
State, 640 S.W.2d 867, 869 (Tex. 1982). The Texas Probate Code requires the court to classify
a judgment filed with it and "[handle] as if originally allowed and approved in due course of
administration." Tex. Prob. Code Ann. § 313 (West 1980). Thus, an adjudicated claim presented
to the probate court must be treated as if already approved as well as allowed, and the probate
court supervises payment of the judgment by the classification process. See Farmers' Nat'l Bank
v. Crumley, 204 S.W. 358 (Tex. Civ. App.--Dallas 1918, no writ).

 By hearing evidence on whether the AGA judgment award against the Executor
included attorney's fees not incurred to establish a rejected claim, the probate court relitigated the
value of that judgment. Essentially the probate court, despite finding the judgment valid and final,
attempted to give it full faith but only partial credit. Since the court was barred from relitigating
this issue, it should not have heard evidence on that point and this Court will disregard all such
evidence. Accordingly, we find no evidence to support the additional credit of $39,464.61 against
the AGA judgment award. Finding no evidence to support this part of the probate court's order,
we need not address the factual sufficiency of the evidence and will sustain the Bank's single point
of error.



Executor's Cross-Points of Error

 The Executor brings five points of error on cross-appeal contending that the probate
court erred in granting the application to classify the amended AGA claim. Cross-points one
through four contend that the probate court erred because the claim sued upon in Tennessee was
not the claim presented and rejected by the Executor. Cross-point five asserts that the evidence
linking the AGA judgment to the AGA claim the Executor rejected was legally and factually
insufficient.



1.  Proper Presentment

 Points of error one through four present the argument that the claim established by
litigation must be for the same exact amount as the claim the executor rejected to meet the
presentment requirement of the Texas Probate Code. See Tex. Prob. Code Ann. § 314 (West
1980) ("No claim shall be rendered in favor of a claimant upon any claim for money which has
not been legally presented to the representative of an estate or ward, and rejected by him or by
the court, in whole or in part."). In this case, the petition in the Tennessee court reflected a
change in the variable interest rate charged on the notes and an increase in attorney's fees due to
the continuing litigation. The Executor asserts that this change created a new claim which had
to be presented to and rejected by him before it could be established by suit. To support his
contentions, the Executor cites Ramsay v. Rouse, 68 S.W.2d 317 (Tex. Civ. App.--Texarkana
1934, writ ref'd).

 This same issue was raised in the previously mentioned companion case, in
reliance on the same authority. As we discussed in the companion case, because the petition in
the Tennessee court alleged presentment, and that allegation was supported in the record, the issue
should have been addressed in that court and on direct appeal from its judgment, not in the Texas
probate court. See Podgoursky v. Frost, 394 S.W.2d 185, 189-90 (Tex. Civ. App.--San Antonio
1965, writ ref'd n.r.e.) (stating that allegations and statements of fact in the petition that claim was
presented satisfy jurisdictional requirement). See also White v. White, 179 S.W.2d 503, 506
(Tex. 1944) (holding as impermissible a collateral attack to challenge the jurisdiction of a court
issuing a binding judgment which is regular on its face and on the record). These points of error
are an impermissible collateral attack on a judgment regular on its face.

 Further, as we discussed in a footnote in that companion case, Ramsay does not
support the Executor's broad proposition. In Ramsay the trial court rendered judgment on a claim
different in basis as well as in amount from the claim presented to the administrator. The claimant
had presented a claim based on a contract, but the trial court rendered judgment based on a
historic employment relationship that the claimant had not presented to the administrator. 
Ramsay, 68 S.W.2d at 319-20. The appeals court found that the employment relationship was a
new claim requiring separate presentment. Id. We conclude in this case, as we did in Stone v.
First Tennessee Bank, No. 3-91-419-CV, that the differences in the petition in Tennessee and the
previously rejected claim were due to the passage of time and did not create a new or alternate
claim. See Thomas v. State Life Ins. Co., 123 S.W.2d 385, 387 (Tex. Civ. App.--Dallas 1938,
no writ).

 Cross-points of error one through four are overruled.



2.  Sufficiency of the Evidence

 The Executor's cross-point of error five asserts that the evidence linking the AGA
judgment to the AGA claim the Executor originally rejected is legally and factually insufficient. 
As we stated in discussing the Bank's single point of error, the standard for reviewing a legally-insufficient evidence or no-evidence point of error is clear. We consider only the evidence and
inferences tending to support the finding by the trier of fact and disregard all evidence to the
contrary. Alm, 717 S.W.2d at 593. In considering a factual insufficiency of the evidence point,
we must weigh all the evidence and will set aside the judgment only if it is so contrary to the
overwhelming weight of the evidence so as to be clearly wrong and unjust. Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986).

 In examining the record, we note that the complaint filed in the Tennessee court
incorporated by reference the AGA notes comprising the rejected AGA claim. This is the same
complaint which was consolidated with the previously existing suit against the other guarantors. 
The only claim asserted against the Executor in either of those suits, and the only claim upon
which a judgment could be rendered against the Executor, was the claim based on those notes. 
The AGA notes presented and rejected by the Executor are the only notes involved in the
consolidated lawsuit which were signed by AGA. The award against the Executor is in the same
amount as the award against AGA. This Court holds that the foregoing evidence constitutes some
evidence that the notes referred to in the AGA judgment were the AGA notes supporting the claim
rejected by the Executor.

 We next look at the evidence contrary to the probate court's finding. There is no
direct evidence that the judgment against the Executor in the consolidated suit is not based on the
AGA notes that formed the basis of the claim rejected by the Executor. The Executor's argument
instead relies on the failure of the AGA judgment to specifically describe the notes beyond a
reference to "the notes on which the complaint is based." The Executor argues that there is
evidence that the suit against the other guarantors included notes besides the AGA notes and on
this basis the probate court could not find that the award in the judgment against the Executor was
related to the rejected claim.

 As we stated above, the only notes which were incorporated in the complaint
against the Executor, and the only notes upon which the Executor's liability in that suit could have
been based, were the AGA notes. We hold that the probate court's finding that the AGA
judgment's award against the Executor was for the same claim previously rejected is not against
the overwhelming weight of the evidence. Cross-point of error five is overruled.



CONCLUSION


 Because we hold that there was no evidence to support the additional credit of
$39,464.41 allowed against the AGA judgment award by the probate court, we modify that
portion of the probate court's order that allows the executor an additional credit of $39,464.41
and order that such credit be deleted. As so modified, the order of the probate court is affirmed.



 

 Mack Kidd, Justice

[Before Justices Powers, Jones and Kidd]

Modified and, as Modified, Affirmed

Filed: September 16, 1992

[Do Not Publish]
1.   Probate Code section 322 sets out guidelines for classifying claims. A claim's class
determines its priority of payment. Tex. Prob. Code Ann. § 322 (West 1980). Paying
claims out of order of their classification could subject the executor to liability if the
estate's assets are insufficient to pay all approved claimants and a higher class claim is
not paid because of payment of a lesser claim. It is the sole responsibility of the probate
court in a dependant administration to determine a claim's classification. See M. K.
Woodward & Ernest E. Smith III, Probate and Decedents' Estates, 18 Texas Practice § 940
(1971) (and cases cited therein).