Jones 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00174-CV







Edward D. Jones & Company, Appellant



v.



The First National Bank of Temple, Acting in the Capacity of Guardian 


of the Estate of Sam A. Winkler, Appellee








FROM THE COUNTY COURT AT LAW NO. 1 OF BELL COUNTY


NO. 14,061, HONORABLE OLIVER KITZMAN, JUDGE PRESIDING







 First National Bank of Temple, guardian of the Estate of Sam A. Winkler, recovered a
money judgment against Edward D. Jones & Company based on a jury verdict. Jones appeals. We will
affirm the judgment.


THE CONTROVERSY


 Pearl Winkler was formerly guardian of Sam A. Winkler's estate. In that capacity, she
received the proceeds of a settlement and compromise reached in a lawsuit brought to recover
compensation for personal injuries received by Mr. Winkler, an incompetent. In authorizing Mrs. Winkler's
receipt of the funds, the probate court ordered that the funds be "dispersed into frozen [sic] interest-bearing
accounts" at the Texana National Bank "until further order of this Court." In violation of the order, Mrs.
Winkler transferred the funds from the Texana National Bank to an investment account at Edward D. Jones
& Company (Jones). When the judge of the probate court discovered the transfer and the fact that the
funds were placed in investments not authorized by the Texas Probate Code, (1) he sent Jones a copy of the
relevant sections of the Code and insisted in an oral transaction with Jones that the funds be reinvested in
compliance with the Code. In an order dated February 24, 1987, the judge ordered that Mrs. Winkler
"not transfer, sell, trade, liquidate, or otherwise dispose of" the funds without first obtaining a court order. 
Jones received a copy of the order dated February 24, 1987.

 Jones sent the judge a letter dated March 5, 1987, assuring him that Jones would re-invest
the funds in compliance with the Code "within five business days." (2) Jones received a document also dated
March 5, 1987, purporting to be a court order. The document directed that Mrs. Winkler "be allowed to
manage" the funds "according to the Texas Probate Code" and that she "shall not be required by this court
to obtain a specific order for reinvestment of said funds . . . if investing according to [the] Texas Probate
Code." The parties disagree on whether the document is a forgery; they also dispute its effect as discussed
below. The jury made no finding relative to the validity of the purported order.

 Between 1987 and 1989, Mrs. Winkler withdrew from the Jones trust account over
$700,000 in principal and interest. When the judge of the probate court learned of the withdrawals in
February 1994, he appointed an attorney ad litem for Mr. Winkler; and, after an investigation, the judge
removed Mrs. Winkler as guardian and appointed in her stead the First National Bank of Temple.

 First National, in its capacity as guardian, sued Mrs. Winkler and Jones to recover losses
sustained by the Estate of Sam Winkler as a result of the transactions described above. (3) The jury found
as follows:


(1) Jones knew Mrs. Winkler withdrew funds in violation of the order dated February 24,
1987, the oral instructions of the judge, and the purported order dated March 5, 1987.


(2) Jones and the judge agreed Mrs. Winkler could manage and reinvest the funds if they
were withdrawn under a court order and reinvested in accordance with the Texas Probate
Code.


(3) Jones failed to comply with the agreement.


(4) Jones reasonably relied on the order of March 5 in failing to comply with the
agreement. 



The trial judge awarded First National judgment on the verdict.


JURY CHARGE


 In points of error three, four, and eleven, Jones complains of error in the wording of jury
question number two, which inquired as follows: 


Did Edward D. Jones have notice or knowledge that Pearl Winkler withdrew funds from
the Guardianship Account in a manner that violated the February 24, 1987 Order, the oral
instructions from Judge Johnson, and the March 5, 1987 Order?



 Jones objected to the wording "for the reason that it imposes liability on Jones without
fault." Jones proposed that the question should be "Do you find that Edward D. Jones [sic] knowingly
participated in Pearl Winkler's breach of her fiduciary duties?" accompanied by an instruction. (4) Jones's
proposed question and instruction correctly state in broad form the applicable principle of liability, but any
error in the judge's narrower formulation was harmless if that formulation contained the proper elements,
fairly submitted to the jury the disputed issues of fact, and incorporated a correct legal standard for the jury
to apply. Tex. R. Civ. P. 277; H. E. Butt Grocery Co. v. Warner, 845 S.W.2d 258, 259-60 (Tex.
1992). That is the case here.


 The broad principle of liability suggested by Jones consists of two elements: "(1) an act or
omission which furthers or completes the breach of trust by the trustee; and (2) knowledge at the time that
the transaction amounted to a breach of trust, or the legal equivalent of such knowledge." George T.
Bogert, The Law of Trusts and Trustees § 901 at 311 (2d rev. ed. 1955). It was unnecessary to include
the first element in the charge because it was undisputed in the evidence that Jones delivered the funds to
Mrs. Winkler on her withdrawal applications, furthering thereby her breach of trust, either wittingly or
unwittingly. The only dispute in the evidence pertained to the second element--whether Jones knew at the
time that the withdrawal transactions amounted to a breach of trust by Mrs. Winkler. 

 If Jones knew the withdrawal transactions violated the court's orders of February 24,
1987, and March 5, 1987, and the judge's instructions, we believe Jones knowingly participated as a
matter of law in Mrs. Winkler's breaches of trust. See Tex. Prob. Code Ann. § 4 (West Supp. 1997)
("The county court shall . . . transact all business appertaining to estates subject to . . . guardianship"); Tex.
Prop. Code Ann. § 113.001 (West 1995) ("A power given to a trustee by this subchapter does not apply
to a trust to the extent . . . a subsequent court order . . . conflicts with or limits the power"). It is undisputed
that Jones knew of the two orders as such; the parties dispute whether both orders prohibited by their
terms the withdrawal transactions. If the orders had that effect, then question number two did not constitute
reversible error merely because it tailored the correct legal standard to the only disputed factual issue that
was material. We hold accordingly.


SUFFICIENCY OF THE EVIDENCE


 In point of error twelve, Jones contends there is no evidence to support the jury finding that
Jones knowingly participated in Mrs. Winkler's breach of fiduciary duty. Consistently with our discussion
above, we interpret the point of error to be a complaint that the evidence does not support the jury finding
that Jones knew the withdrawal transactions were prohibited by the two court orders and the judge's
instructions. 

 Jones's employee conceded that he understood that the February 24, 1987, order "froze"
the funds in the trust account until further order of the court. Jones argues that the February 24, 1987,
order was superceded by the March 5, 1987, order and that it authorized Mrs. Winkler to withdraw funds
from the trust account. Consequently, no evidence exists, Jones contends, to support the jury finding that
Jones knew Mrs. Winkler's withdrawals violated the court orders and the judge's instructions. We
disagree.

 The March 5, 1987, order recites that Mrs. Winkler had applied for authority to manage
the funds according to sections 389 and 389A of the Probate Code. The application, if it exists, is not in
the record. The March 5, 1987, order concludes by ordering that Mrs. Winkler


be allowed to manage such funds as are included in the Order FREEZING SAID FUNDS
[sic] dated 24th February, 1987 according to TEXAS PROBATE CODE [sic] and shall
not be required by this court to obtain a specific order for reinvestment of said funds from
this court if investing according to Texas Probate Code.


The order expressly authorizes Mrs. Winkler to reinvest the trust account funds "without specific court
approval of each individual transaction," provided the funds are placed "in qualified investments." Nothing
in the order authorizes her withdrawal of trust account funds "frozen" by the previous court order. (5) The
literal import of the order is that Mrs. Winkler was authorized to direct reinvestment of the funds while they
remained in the trust account. This literal interpretation was also the understanding communicated to Jones
by the judge. The judge denied signing the March 5, 1987, order but testified that "it was implicit in every
conversation" that he had with Jones that the funds "had been unlawfully transferred" to Jones, that the
judge "had frozen them in place," that "once they were placed in proper investments, they could be
reinvested, but they were not to be withdrawn." (Emphasis added.) The evidence showed that Jones
nevertheless paid trust account funds over to Mrs. Winkler on several occasions, and that some of the funds
were deposited in her personal investment account also maintained by Jones. 

 After taking the appropriate view of the evidence and the measure of its sufficiency, we
conclude there is more than a scintilla of evidence to support a finding that Jones knew Mrs. Winkler's
withdrawals violated the court orders and the judge's instructions when Jones delivered the funds to her. 
We overrule point of error twelve. See Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593 (Tex.
1986), cert. denied, 111 S. Ct. 135 (1990); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). See
generally William Powers, Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient
Evidence", 69 Tex. L. Rev. 515 (1991). Because the judgment is supported on the theory just discussed,
we need not address Jones's objections to the other theories of liability submitted. See Boatland of
Houston, Inc. v. Bailey, 609 S.W.2d 743, 750 (Tex. 1980); McMillion v. Wilkinson, 135 S.W.2d 231,
235 (Tex. Civ. App.--Dallas 1939, writ dism'd). We affirm the trial-court judgment.



 

 John Powers, Justice

Before Justices Powers, Aboussie, and Jones

Affirmed

Filed: May 1, 1997

Do Not Publish
1. Section 389 of the Texas Probate Code specifies the kinds of investments permitted the guardian of
a ward's estate. Tex. Prob. Code Ann. §389 (West Supp. 1997). Broadly stated, the authorized
investments are: government bonds of various kinds; shares and share accounts of state and federal savings
and loan associations when insured by the Federal Savings and Loan Insurance Corporation; interest-bearing time deposits of a bank when insured by the Federal Deposit Insurance Corporation; and collateral
bonds of Texas corporations having a minimum paid-in capital of $1,000,000 when secured by real-estate
mortgages or other securities. At the times material in the present case, section 389A of the Probate Code
required a court order approving any other proposed investment. This section has since been repealed. 
61st Leg., R.S., ch. 707, §1, 1969 Tex. Gen. Laws 2052 (Tex. Prob. Code Ann. § 389A, since amended
and repealed). 
2. Jones's accounting records showed the funds were reinvested on March 12, 1987, in compliance with
the Code.
3. Mrs. Winkler stipulated to facts establishing that she violated specific statutory and fiduciary duties
owed to Sam Winkler.
4. The requested instruction was as follows:


 You are instructed that a financial institution may be held liable if it participates in a guardian's
breach of fiduciary duty, and if the institution has actual notice or knowledge that the breach of
fiduciary duty was being committed by an improper withdrawal of funds and if it permitted such
withdrawal after obtaining actual notice or knowledge.
5. Jones thus could not have "reasonably relied" upon the March 5, 1987, order as a matter of law,
insofar as Jones contends the order authorized Mrs. Winkler to withdraw funds from the trust account.



luded in the Order FREEZING SAID FUNDS
[sic] dated 24th February, 1987 according to TEXAS PROBATE CODE [sic] and shall
not be required by this court to obtain a specific order for reinvestment of said funds from
this court if investing according to Texas Probate Code.


The order expressly authorizes Mrs. Winkler to reinvest the trust account funds "without specific court
approval of each individual transaction," provided the funds are placed "in qualified investments." Nothing
in the order authorizes her withdrawal of trust account funds "frozen" by the previous court order. (5) The
literal import of the order is that Mrs. Winkler was authorized to direct reinvestment of the funds while they
remained in the trust account. This literal interpretation was also the understanding communicated to Jones
by the judge. The judge denied signing the March 5, 1987, order but testified that "it was implicit in every
conversation" that he had with Jones that the funds "had been unlawfully transferred" to Jones, that the
judge "had frozen them in place," that "once they were placed in proper investments, they could be
reinvested, but they were not to be withdrawn." (Emphasis added.) The evidence showed that Jones
nevertheless paid trust account funds over to Mrs. Winkler on several occasions, and that some of the funds
were deposited in her personal investment account also maintained by Jones. 

 After taking the appropriate view of the evidence and the measure of its sufficiency, we
conclude there is more than a scintilla of evidence to support a finding that Jones knew Mrs. Winkler's
withdrawals violated the court orders and the judge's instructions when Jones delivered the funds to her. 
We overrule point of error twelve. See Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593 (Tex.
1986), cert. denied, 111 S. Ct. 135 (1990); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). See
generally William Powers, Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient
Evidence", 69 Tex. L. Rev. 515 (1991). Because the judgment is supported on the theory just discussed,
we need not address Jones's objections to the other theories of liability submitted. See Boatland of
Houston, Inc. v. Bailey, 609 S.W.2d 743, 750 (Tex. 1980); McMillion v. Wilkinson, 135 S.W.2d 231,
235 (Tex. Civ. App.--Dallas 1939, writ dism'd). We affirm the trial-court judgment.



 

 John Powers, Justice

Before Justices Powers, Aboussie, and Jones

Affirmed

Filed: May 1, 1997

Do Not Publish
1. Section 389 of the Texas Probate Code specifies the kinds of investments permitted the guardian of
a ward's estate. Tex. Prob. Code Ann. §389 (West Supp. 1997). Broadly stated, the authorized
investments are: government bonds of various kinds; shares and share accounts of state and federal savings
and loan associations when insured by the Federal Savings and Loan Insurance Corporation; interest-bearing time deposits of a bank when insured by the Federal Deposit Insurance Corporation; and collateral
bonds of Texas corporations having a minimum paid-in capital of $1,000,000 when secured by real-estate
mortgages or other securities. At the times material in the present case, section 389A of the Probate Code
required a court order approving any other proposed investment. This section has since been repealed. 
61st Leg., R.S., ch. 707, §1, 1969 Tex. Gen. Laws 2052 (Tex. Prob. Code Ann. § 389A, since amended
and repealed). 
2. Jones's accounting records showed the funds were reinvested on March 12, 1987, in compliance with
the Code.
3. Mrs. Winkler stipulated to facts establishing that she violated specific statutory and fiduciary duties
owed to Sam Winkler.
4. The requested instruction was as follows:


 You are instructed that a financial institution may be held liable if it participates in a guardian's
breach of fiduciary duty, and if the institution has actual notice or knowledge that the breach of
fiduciary duty was being committed by an improper withdrawal of funds and if it permitted such
withdrawal after obtaining actual notice or knowledge.
5. Jones thus could not have "reasonably relied" upon the March 5, 198